1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

** E-filed on 5/23/05 **

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| EDWARD L. SCARFF, et al., | Case Numbers  C 03-03394 JF |
| Plaintiffs, | C 03-04829 JF |
| | C 03-05871 JF |
| v. | ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS OF THE CONSOLIDATED AMENDED COMPLAINT |
| COMERICA BANK–CALIFORNIA, et al., | |
| Defendants. | |
| | [Docket Nos. 124, 125, 126, 129, 130, and 136 (C 03-03394 JF); 59, 62, and 65 (C 03-04829 JF); and 38 (C 03-05871 JF)] |

Defendants have filed numerous motions to dismiss and strike portions of the Consolidated Amended Complaint ("CAC").[1] Plaintiffs oppose the motions.[2] The Court has read

_____

[1] The following motions are before the Court: (1) Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Carol Barber ("Barber") move to dismiss certain claims and to strike portions of the CAC, (2) Defendants Intuit Inc. ("Intuit"), Computing Resources, Inc. ("CRI"), and Lisa Ciccotti ("Ciccotti") move to dismiss certain claims and to strike portions of the CAC, (3) Defendant Kelly Hvegholm ("Hvegholm") moves to dismiss certain claims, (4) Defendant Comerica Bank ("Comerica"), successor to Comerica Bank–California, moves to dismiss certain claims and to strike portions of the CAC, (5) Defendant Joan Burtzel ("Burtzel") joins in

the moving and responding papers and has considered the oral arguments of counsel presented on

October 15, 2004. For the reasons set forth below, the motions will be granted in part and denied

in part.

## I. BACKGROUND

The general background of the present action is described in the Court's Amended Order

Re Motions to Withdraw Reference to the Bankruptcy Court and Motions to Dismiss, dated June

18, 2004 ("Order of June 18, 2004").[3] As relevant to the instant motions, in the Order of June 18,

2004, the Court granted Ciccotti's motion to dismiss Plaintiffs' claim against her pursuant to 12

U.S.C. § 503 with leave to amend, *see* Order of June 18, 2004, at 13-14, and denied Barber's

motion to dismiss Plaintiffs' claim against her pursuant to 12 U.S.C. § 503, *see id.* at 17-18.[4]

Then, in two Orders issued on July 22, 2004, the Court granted both (1) Wells Fargo's motion to

dismiss Plaintiffs'[5] claims for breach of written contract, breach of implied contract, breach of

the implied covenant of good faith and fair dealing, conversion, negligence, conspiracy, unjust

---

Comerica's motion, (6) Defendant Bank of America, N.A. ("Bank of America") moves to
dismiss certain claims, and (7) Defendant Fidelity National Title Company ("Fidelity") moves to
dismiss the claim for slander of title. Carol Huang ("Huang"), who is named as a Defendant in
the caption of the CAC and who is discussed throughout the CAC but against whom none of the
claims for relief are asserted explicitly, is the only Defendant who has not filed a motion to
dismiss. The Court appreciates the parties' patience in awaiting a ruling on the multitude of
complex and in some instances novel issues presented by the motions.

[2] Nancy Scarff is named as a Plaintiff for the first time in the CAC. The other Plaintiffs
named in the CAC are Edward Scarff; Scarff, Sears & Associates ("SSA"); and Pentoga Partners
("Pentoga"). All four Plaintiffs oppose Defendants' motions.

[3] The Amended Order merely corrects a citation in the Court's Order of April 29, 2004.

[4] In that Order, the Court also ruled on motions to dismiss claims that do not appear in the
CAC, as well as on other motions.

[5] For the purposes of the two motions decided in the Orders of July 22, 2004, Edward
Scarff, both individually and in his capacity as trustee of the Edward and Nancy Scarff 1985
Trust, SSA, and Pentoga technically were cross-complainants, and Nancy Scarff was not a named
party. However, for the sake of consistency in the instant Order, the Court refers to them here as
"Plaintiffs."

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1  enrichment, rescission, and unfair business practices, as well as to strike Plaintiffs' prayer for

2  damages and for a more definite statement of the claims for negligent misrepresentation and

3  fraudulent concealment, and (2) Intuit's and CRI's motion to dismiss Plaintiffs' claims for breach

4  of an implied-in-fact contract, breach of the implied covenant of good faith and fair dealing,

5  unauthorized payment order and funds transfer pursuant to sections 11202 through 11204 of the

6  California Commercial Code, negligent misrepresentation, indemnity, conspiracy, and unfair

7  business practices, as well as to strike Plaintiffs' prayer for damages. In granting the motions of

8  Wells Fargo, Intuit, and CRI, the Court allowed Plaintiffs one final opportunity to amend their

9  complaint to preserve only their tenable claims, consistent with the Orders of July 22, 2004, and

10  it directed Plaintiffs to combine their claims against all Defendants into a single consolidated

11  complaint. Plaintiffs filed the CAC on August 16, 2004, collectively alleging fifteen claims for

12  relief[6] against various groups of Defendants.

## II. MOTIONS TO DISMISS

14  **A.    Legal Standard**

15         A complaint may be dismissed for failure to state a claim upon which relief can be

16  granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for one of two

17  reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal

18  theory. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds,*

19  *Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of a motion to dismiss, all allegations of

20  material fact in the complaint are taken as true and construed in the light most favorable to the

21  nonmoving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). Although

22  the Court generally may not consider any material beyond the pleadings when ruling on a motion

23  to dismiss pursuant to Rule 12(b)(6), *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997), it may

24  consider documents that are attached to and part of the complaint, *Durning v. First Boston Corp.*,

25  815 F.2d 1265, 1267 (9th Cir. 1987). A complaint should not be dismissed "unless it appears

27         [6] Although Plaintiffs refer to their claims as "causes of action," the preferred term in
federal litigation is "claims for relief." The Court therefore will use the latter term.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clegg*, 18 F.3d at 754. However, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Id*. at 754-55. Motions to dismiss generally are viewed with disfavor under this liberal standard and are granted rarely. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

**B.   First Claim for Relief: Breach of Contract**

In their first claim for relief, Plaintiffs allege that Wells Fargo, Intuit, and CRI are liable to all of them for breach of contract.[7] The two contracts that form the basis for this claim are a "Business Services Processing Agreement" between Wells Fargo and Pentoga, dated October 6, 1983, and a "Business Services Processing Agreement" between Wells Fargo and SSA, dated November 3, 1983. Both contracts, which are attached as exhibits to the CAC, cover payroll processing and payroll tax services. *See* CAC, Exs. A & B. Plaintiffs also allege, on information and belief, that Wells Fargo and CRI—and later Intuit[8]—entered into subcontracts, which were "made for the express benefit" of all Plaintiffs, under which CRI—and later Intuit—assumed Wells Fargo's obligations under the two "Business Services Processing Agreements." CAC ¶ 123. Wells Fargo, Intuit, and CRI are alleged to have breached their obligations to Plaintiffs under the "Business Services Processing Agreements."

Wells Fargo, Intuit, and CRI argue that Plaintiffs' breach-of-contract claim should be dismissed as to Edward and Nancy Scarff, as the Scarffs were not parties to the "Business Services Processing Agreements" and thus do not have standing to assert a claim for a breach of those agreements. Although Plaintiffs allege in the CAC that Edward and Nancy Scarff, along with Pentoga and SSA, entered into the respective agreements, the contracts attached to the CAC list only Pentoga and SSA as Wells Fargo's "Customer[s]." Accordingly, the claim for breach of

---

[7] The Court does not address the motion to dismiss this claim by Hvegholm, who is not named as a Defendant with respect to the claim for breach of contract.

[8] Intuit is alleged to have acquired CRI as a wholly owned subsidiary in May 1999.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1   contract will be DISMISSED as to Edward and Nancy Scarff.

2       Wells Fargo, Intuit, and CRI also argue that Plaintiffs' breach-of-contract claim should be

3   dismissed as to Pentoga and SSA, because Plaintiffs' allegations as to how the contracts were

4   breached are not supported by the terms of the "Business Services Processing Agreements"

5   themselves. Plaintiffs allege that Wells Fargo, Intuit, and CRI breached their contractual

6   obligations by (1) "[r]epeatedly disburs[ing] excessive payroll 'overpayments'" to Huang,

7   knowing that Huang was to receive her salary twice a month in preestablished amounts, (2)

8   "[m]odif[ying] and alter[ing] the stated payroll for Huang" without the knowledge of or

9   authorization from Edward Scarff, Pentoga, SSA, or any authorized officer, director, or agent of

10  Pentoga or SSA, (3) adjusting the payroll records of Pentoga and SSA to conceal the payment of

11  excess income to Huang and to relieve Huang of personal income tax liability for the

12  "overpayments," (4) advising Huang how to avoid personal income tax liability for the

13  "overpayments," (5) using "repeated, unauthorized telephone transfers to draw monies" from

14  Wells Fargo accounts, (6) mailing and/or delivering statements only to Huang and/or maintaining

15  payroll records at an "off-site location" in an effort to conceal the "overpayments" from Edward

16  Scarff, Pentoga, and SSA, (7) "[r]efus[ing] and/or fail[ing] to communicate directly" with

17  Edward Scarff or other officers, directors, or authorized agents of Pentoga or SSA or to alert

18  them to Huang's activities, and (8) breaching "written and unwritten policies . . . concerning the

19  acceptance of kickbacks, gifts, or bribes from clients." CAC ¶ 126.

20      The Court agrees with Wells Fargo, Intuit, and CRI that the duties alleged by Plaintiffs do

21  not appear in the "Business Services Processing Agreements." Among other things, the contracts

22  do not contain preestablished salaries or provide that disbursements cannot exceed certain

23  amounts, do not prohibit telephonic transfers of funds, do not prohibit maintenance of records at

24  an "off-site location," and do not incorporate policies regarding "the acceptance of kickbacks,

25  gifts, or bribes from clients."[9] Moreover, the contracts do not require authorization from or direct

26  _____

27      [9] Each written agreement provides that the "Business Services Processing Agreement"

28  itself, together with the documents incorporated by reference therein, "constitutes the complete

5

communication with Edward Scarff. Indeed, Huang specifically is listed as a "contact[]" for both Pentoga and SSA,[10] and her signature explicitly is authorized for the purpose of "System Changes," "Stop Payment," and "Payroll Preparation."[11] In light of the actual contractual provisions, it is clear that Plaintiffs have failed to state a claim for breach of the "Business Services Processing Agreements" between Wells Fargo and Pentoga and SSA, respectively. Accordingly, the claim for breach of contract also will be DISMISSED as to Pentoga and SSA.[12]

## C.   Second Claim for Relief: Breach of the Implied Covenant of Good Faith and Fair Dealing

In their second claim for relief, Plaintiffs allege that Wells Fargo, Intuit, and CRI are liable to all of them for breach of the implied covenant of good faith and fair dealing.[13] Like the claim for breach of contract, this claim is based on the "Business Services Processing Agreements" between Wells Fargo and Pentoga and SSA, respectively, and Wells Fargo's alleged subcontracts with CRI and Intuit, under which CRI and Intuit allegedly assumed Wells Fargo's obligations under the two "Business Services Processing Agreements." Plaintiffs allege that implied in the agreements and subcontracts was a covenant that Wells Fargo, Intuit, and CRI "would act in good faith and deal fairly with Plaintiffs . . . and would not do anything to deprive

---

contract between Customer and [Wells Fargo] regarding the services described in the Specification."

[10] Huang is listed as a contact in the original agreement between Wells Fargo and Pentoga and in an amendment to the agreement between Wells Fargo and SSA dated July 30, 1985.

[11] The authorities cited by Plaintiffs regarding liability for causing or assisting an agent to violate its fiduciary duties to a principal do not establish liability under the law of contract.

[12] Because the Court dismisses this claim on the grounds that Edward and Nancy Scarff were not parties to the agreements and that Pentoga and SSA have not adequately alleged a breach, the Court need not reach Defendants' additional argument that Plaintiffs have not adequately alleged damages. However, this issue will be addressed with respect to Plaintiffs' third claim for relief below.

[13] The Court does not address the motion to dismiss this claim by Hvegholm, who is not named as a Defendant with respect to the claim for breach of the implied covenant of good faith and fair dealing.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1   Plaintiffs . . . of the benefits" of the "Business Services Processing Agreements." CAC ¶ 132.

2   The acts alleged to constitute a breach of the implied covenant are virtually identical to the acts

3   alleged to constitute a breach of contract in Plaintiffs' first claim for relief.

4       Wells Fargo, Intuit, and CRI argue that Plaintiffs' claim for breach of the implied

5   covenant of good faith and fair dealing should be dismissed as to Edward and Nancy Scarff, as

6   they were not parties to the payroll contracts. They correctly point out that someone who is not a

7   party to a contract has no standing to enforce the implied covenant of good faith and fair dealing

8   that arises from and exists solely because of that contract. *See Jones v. Aetna Cas. & Sur. Co.*, 33

9   Cal. Rptr. 2d 291, 294 (Ct. App. 1994). Accordingly, the claim for breach of the implied

10  covenant of good faith and fair dealing will be DISMISSED as to Edward and Nancy Scarff.

11      Wells Fargo, Intuit, and CRI also argue that Plaintiffs' claim for breach of the implied

12  covenant of good faith and fair dealing should be dismissed as to Pentoga and SSA, because

13  Plaintiffs' allegations as to how the implied covenant was breached are inconsistent with the

14  terms of the "Business Services Processing Agreements." Again, they correctly point out that the

15  implied covenant of good faith and fair dealing "exists merely to prevent one contracting party

16  from unfairly frustrating the other party's right to receive the *benefits of the agreement actually*

17  *made*" and "cannot impose substantive duties or limits on the contracting parties beyond those

18  incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089,

19  1110 (Cal. 2000). As the Court already has found that Plaintiffs' allegations of breach of contract

20  are not supported by the terms of the agreements themselves, it necessarily follows that

21  allegations of virtually identical acts cannot state a claim for breach of the implied covenant of

22  good faith and fair dealing that exists in those very same agreements. Accordingly, the claim for

23  breach of the implied covenant of good faith and fair dealing also will be DISMISSED as to

24  Pentoga and SSA.[14]

25  //

26  ───────────────

27      [14] As with the first claim for relief, at this time, the Court need not reach Defendants'

28  argument that Plaintiffs have not adequately alleged damages. *See supra* note 12.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

**D.     Third Claim for Relief: Fraud and Deceit**

In their third claim for relief, Plaintiffs allege that Wells Fargo, Intuit, CRI, Barber,[15] Hvegholm,[16] and Ciccotti[17] are liable to all of them for fraud and deceit in connection with the alleged "payroll scheme." They explain in their opposition brief that this claim is premised on secondary rather than direct liability[18] and that these six Defendants are alleged to have conspired with and/or aided and abetted Huang in carrying out the "payroll scheme."

Wells Fargo, Intuit, CRI, Barber, Hvegholm, and Ciccotti argue that Plaintiffs' claim for fraud and deceit in connection with the "payroll scheme" should be dismissed because Plaintiffs have failed to present adequate allegations of fraud by Huang herself. The elements of fraud and deceit are as follows: (1) a misrepresentation (i.e., false representation, concealment, or nondisclosure), (2) knowledge of the falsity, (3) intent to defraud (i.e., to induce reliance), (4) justifiable reliance, and (5) resulting damage.[19] *Lazar v. Superior Court*, 909 P.2d 981, 984 (Cal.

---

[15] Barber is alleged to have been an assistant vice president of Wells Fargo.

[16] Hvegholm is alleged to have been employed as a managing agent by Intuit and CRI to provide payroll services technical support.

[17] Ciccotti is alleged to have been employed as a managing agent by Intuit and CRI to provide payroll processing services.

[18] Although Plaintiffs accuse Defendants of "deliberately misconstru[ing]" the claims for fraud and deceit—the third and ninth claims for relief—by characterizing them as seeking to impose direct liability and moving to dismiss them under that theory, Opp'n to Mots. of Wells Fargo, et al., at 14; Opp'n to Mot. of Bank of America at 11, the Court agrees with Defendants that these claims for relief reasonably may be read as claims for direct liability for fraud and deceit. Nonetheless, Plaintiffs will be held to the position, as asserted in their opposition briefs, that these two claims "do ***not*** seek to impose direct liability." Opp'n to Mots. of Wells Fargo, et al., at 14; Opp'n to Mot. of Bank of America at 11.

[19] When a claim for fraud and deceit is based specifically on concealment, the elements of the claim are as follows: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Marketing West, Inc. v. Sanyo*

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1   1996). Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") requires that the "circumstances

2   constituting fraud . . . be stated with particularity." Fed. R. Civ. P. 9(b). Statements of the "time,

3   place, and nature of the alleged fraudulent activities" are sufficient, while "mere conclusory

4   allegations of fraud" are not. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th

5   Cir. 1989) (stating that a pleading is sufficient under Rule 9(b) "if it identifies the circumstances

6   constituting fraud so that a defendant can prepare an adequate answer from the allegations").

7        Wells Fargo, Intuit, CRI, Barber, Hvegholm, and Ciccotti are correct that the CAC

8   contains no *claim* for fraud and deceit against *Huang*, *see supra* note 1, and that the CAC is by

9   no means a model of clarity or specificity.  However, even in the context of Rule 9(b), the Court

10  concludes that Plaintiffs' allegations are sufficient to put Defendants on notice of the nature of

11  the fraudulent acts Defendants are alleged to have assisted. Huang is alleged to have been

12  employed by all four Plaintiffs, *see* CAC ¶ 31, and to have had "control over the books, records,

13  payroll, bank accounts, and other financial matters for SSA and Pentoga, and some of Mr.

14  Scarff's personal finances," CAC ¶ 49. In that role, she is alleged to have masterminded and

15  carried out various schemes to embezzle millions of dollars from Plaintiffs, and, indeed, she has

16  pled guilty to federal criminal charges of mail fraud and money laundering for her role in the

17  alleged "payroll scheme" and "credit line scheme." *See* CAC ¶ 31. To cover up her actions,

18  which repeatedly are alleged to have been taken without Edward Scarff's authorization,

19  knowledge, or consent, *see, e.g.*, CAC ¶ 8, Huang is alleged, among other things, to have (1)

20  "personally received mail, deliveries, and notices involving payroll or other financial matters for

21  SSA and Pentoga, all of which were directly delivered, unopened, to Huang," CAC ¶ 50, (2)

22  received some mail regarding Plaintiffs' accounts at a postal box that she "kept secret from Mr.

23  Scarff," CAC ¶ 65, (3) "discarded" the quarterly payroll reports for Pentoga and SSA that

24  reflected her payroll "overpayments" when they arrived in the mail and thus "secreted [them]

25  from Mr. Scarff, as well as the officers and directors of Pentoga and SSA," CAC ¶ 71, (4) "kept

26  the keys" to filing cabinets containing the financial records of Pentoga, SSA, and Edward Scarff

27

28  *Fisher (USA) Corp.*, 7 Cal. Rptr. 2d 859, 864 (Ct. App. 1992).

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1   and locked the cabinets when she was out of the office, "ensuring that no one else—including

2   Mr. Scarff—would have access to these files, or be alerted to their contents," CAC ¶ 50, (5)

3   "secreted from Mr. Scarff and/or the other officers and directors of SSA and Pentoga" "[c]ertain

4   payroll reports [that] were held off-site," *id.*, and (6) arranged for the "reversal" of the

5   "overpayments," which ensured that they would be "hidden, i.e., not included in the total payroll

6   on SSA and Pentoga payroll tax returns," CAC ¶ 57. Although the CAC lacks more precise

7   details regarding most of the fraudulent acts in which Huang is alleged to have engaged over the

8   course of the twelve or more years she allegedly perpetrated the "payroll scheme," it reveals

9   Plaintiffs' theories of Huang's concealment well enough to overcome a motion under Rule

10  12(b)(6).[20] Defendants will have ample opportunity to explore the details of Huang's alleged

11  conduct through discovery.

12      Wells Fargo, Intuit, CRI, Barber, and Ciccotti also argue that Plaintiffs' claim for fraud

13  and deceit in connection with the "payroll scheme" should be dismissed because Plaintiffs have

14  failed to present adequate allegations regarding Defendants' assistance in perpetrating Huang's

15  fraud. Plaintiffs allege that Wells Fargo, Intuit, CRI, Barber, Hvegholm, and Ciccotti conspired

16  with and/or aided and abetted Huang in carrying out the "payroll scheme." The elements of an

17  "action" for civil conspiracy—which is not a claim in itself but rather is "a legal doctrine that

18  imposes liability on persons who, although not actually committing a tort themselves, share with

19  the immediate tortfeasors a common plan or design in its perpetration"—are "the formation and

20  operation of the conspiracy and damage resulting to plaintiff from an act or acts done in

21  furtherance of the common design." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d

22  454, 457 (Cal. 1994) (internal quotation marks omitted). Tort liability for a civil conspiracy is

23

24

25

26      [20] In opposing Defendants' motions to dismiss, Plaintiffs point to no allegations in the

27  CAC that Huang made false representations to *Plaintiffs* in connection with the alleged "payroll

28  scheme," and the Court has found none.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

activated by the commission of an actual tort.[21] *Id.* A plaintiff is entitled to damages from "those defendants who concurred in the tortious scheme with knowledge of its unlawful purpose," and that concurrence and knowledge "may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances." *Wyatt v. Union Mortgage Co.*, 598 P.2d 45, 52 (Cal. 1979). Since conspiracy is not an independent tort, it "cannot create a duty or abrogate an immunity," and it "allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles." *Applied Equip.*, 869 P.2d at 459.

Liability for aiding and abetting the commission of an intentional tort, which is a basis for liability separate from conspiracy liability, *see Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1133-36 (C.D. Cal. 2003) (discussing different requirements); *Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr. 3d 401, 406 n.2 (Ct. App. 2005) (adopting reasoning from *Neilson*), may be imposed if a person, knowing that another person's conduct constitutes a breach of duty, "gives substantial assistance or encouragement to the other to so act," *Saunders v. Superior Court*, 33 Cal. Rptr. 2d 438, 446 (Ct. App. 1994). In order to state a claim for aiding and abetting, Plaintiffs must allege "actual knowledge of the primary violation in which [Defendants] purportedly participated." *Casey*, 26 Cal. Rptr. 3d at 408; *see also id.* at 411-12 (requiring that the complaint "allege the defendant's actual knowledge of the *specific* breach of fiduciary duty for which it seeks to hold the defendant liable" under a theory of aiding and abetting breach of a fiduciary duty and rejecting a "'kitchen sink' allegation" that the defendants knew the fiduciaries were "involved in 'wrongful or illegal conduct,'" were making unauthorized withdrawals "'in breach of their fiduciary duties,'" and "'were actually involved in a criminal or dishonest and wrongful enterprise'") (emphasis added).

//

---

[21] "The pleaded facts must show something which, without conspiracy, would give rise to a cause of action." *117 Sales Corp. v. Olsen*, 145 Cal. Rptr. 778, 780 (Ct. App. 1978) (noting that, "[i]n fact, if the wrongful act is set out, the conspiracy allegation is unnecessary to the cause of action").

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

Contrary to Defendants' assertions, Plaintiffs have alleged how Defendants purportedly assisted Huang's fraudulent acts. Among other things, Wells Fargo, Intuit, CRI, Barber, Hvegholm, and/or Ciccotti are alleged to have (1) processed payroll "overpayments" for Huang, knowing that Huang was entitled to only a specific, predetermined salary, CAC ¶ 137, (2) failed to state the extent or nature of the "overpayments" on payroll reporting documents, *id.*, (3) "[s]ecret[ed] the payroll scheme from the officers and directors of SSA, Pentoga, and/or Mr. Scarff through the device of telephonic communications, and/or by storing SSA and Pentoga's payroll reporting documents at an off-site location where they would not be reviewed, inspected, or found by Mr. Scarff and/or the officers, directors and authorized representatives of Plaintiffs SSA and/or Pentoga," *id.*, (4) "[h]id and concealed their wrongdoing from Mr. Scarff and/or officers or agents of SSA and Pentoga by mailing or delivering statements directly to Huang only," CAC ¶ 6, (5) instructed others to contact only Huang when handling Plaintiffs' accounts and to send mail to a postal box Huang kept secret from Edward Scarff, CAC ¶ 65, (6) "verbally instructed Huang as to the amount that needed to be 'reversed' out from her fraudulent payroll 'overpayments' that were in excess of her actual, pre-established salary at SSA or Pentoga, so that the 'overpayments' would be hidden, i.e., not included in the total payroll on SSA and Pentoga payroll tax returns," CAC ¶ 57, (7) "reversed" Huang's "overpayments" on paper in order to "cover up" the "payroll scheme," CAC ¶ 5, and (8) transferred funds from Edward Scarff's personal accounts at Wells Fargo through Northcliff Corporation's[22] account at Wells Fargo in order to "reimburs[e] the SSA and Pentoga payroll accounts," CAC ¶ 66. Barber, Hvegholm, and Ciccotti further are alleged to have accepted "kickbacks, gifts and bribes from Huang" for their part in the alleged "payroll scheme." CAC ¶ 137; *see also* CAC ¶¶ 63, 72. The Court concludes that these allegations are sufficient to overcome Defendants' motions to dismiss Plaintiffs' claim for fraud and deceit, as they are directed to Defendants' state of mind and assistance in Huang's alleged "payroll scheme."

---

[22] Northcliff Corporation ("Northcliff"), which was formed by Edward Scarff in 1986, is not a party to this lawsuit.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1    Finally, Wells Fargo, Intuit, CRI, Barber, and Ciccotti argue that Plaintiffs' claim for

2    fraud and deceit in connection with the "payroll scheme" should be dismissed because Plaintiffs

3    have failed to allege cognizable damages. However, Plaintiffs appear to have cured the defect

4    found in past versions of their complaint by alleging damages separate from the funds drawn

5    down from the lines of credit. Specifically, Plaintiffs allege that they have lost over $15 million

6    in the "payroll scheme" from "Mr. Scarff's earnings and/or income from various sources,

7    including investments, the sale of property, employment income, and/or the corporate earnings of

8    SSA, Pentoga, and/or Northcliff." CAC ¶ 9. Although Plaintiffs' description of how the "payroll

9    scheme" worked leaves it far from clear at times that the alleged losses did not result exclusively

10   from Huang's embezzlement of funds drawn down from the lines of credit, Plaintiffs do state in

11   at least one paragraph of the CAC that the sums drawn down from the lines of credit and

12   deposited into Edward Scarff's personal account at Wells Fargo, "*together with Mr. Scarff's*

13   *personal [Wells Fargo] deposits, and [Wells Fargo] deposits associated with the income and/or*

14   *earnings of SSA, Pentoga, and Northcliff* (a separate account), were used to 'fund' the SSA and

15   Pentoga business accounts that were used for payroll." CAC ¶ 8 (emphasis added). This

16   allegation suggests actual losses by Edward Scarff, Pentoga, and SSA from deposits of their own

17   funds into their accounts at Wells Fargo—though not by Nancy Scarff, whose assets are not

18   alleged to have been used for Huang's payroll "overpayments." Despite Defendants' arguments

19   to the contrary, these alleged losses by Edward Scarff, Pentoga, and SSA are not any less real

20   simply because their accounts were "reimbursed" using funds drawn down from the lines of

21   credit, as the credit-line funds do not constitute money that Plaintiffs are entitled to keep or that

22   the Defendant banks have disclaimed any right to recover.

23   In light of the foregoing discussion, Plaintiffs' claim for fraud and deceit in connection

24   with the "payroll scheme" will be DISMISSED as to Nancy Scarff. The motions of Wells Fargo,

25   Intuit, CRI, Barber, Hvegholm, and Ciccotti to dismiss this claim otherwise will be DENIED.

26   //

27   //

28

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

**E.**     **Fourth Claim for Relief: Conversion**

In their fourth claim for relief, Plaintiffs allege that Wells Fargo, Intuit, CRI, Barber, Hvegholm, and Ciccotti are liable to all of them for conversion in connection with the alleged "payroll scheme." They explain in their opposition brief that this claim is premised on secondary rather than direct liability[23] and that these six Defendants are alleged to have conspired with and/or aided and abetted Huang in embezzling Plaintiffs' money.

Wells Fargo, Intuit, CRI, Barber, and Ciccotti argue that Plaintiffs' claim for conversion in connection with the "payroll scheme" should be dismissed because Plaintiffs have failed to allege any underlying tort of conversion that Defendants could have conspired to commit or have aided and abetted. Conversion is "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Gruber v. Pac. States Sav. & Loan Co.*, 88 P.2d 137, 139 (Cal. 1939). The Court concludes that Plaintiffs have adequately alleged acts constituting conversion by Huang in that Huang is alleged to have embezzled money belonging to Plaintiffs. The cases cited by Defendants for the proposition that the act of disbursing funds from a customer's bank accounts cannot constitute conversion as a matter of law address only the liability of a *bank* for conversion of a deposit *to its own use. See, e.g.*, *Morse v. Crocker Nat'l Bank*, 190 Cal. Rptr. 839, 842 (Ct. App. 1983). However, as discussed above, Plaintiffs do not allege that the banks themselves or their agents are liable directly for conversion.

_____

[23] As with the claims for fraud and deceit, *see supra* note 18, Plaintiffs assert that Defendants have erred in reading the claims for conversion—the fourth and tenth claims for relief—as seeking to impose direct liability and moving to dismiss them under that theory. *See* Opp'n to Mots. of Wells Fargo, et al., at 16; Opp'n to Mot. of Bank of America at 14. However, the Court agrees with Defendants that these claims reasonably may be read as claims for direct liability for conversion. *See* CAC ¶ 146 ("Defendants [Wells Fargo], CRI and Intuit, and their employees, agents and representatives including, Barber, Hvegholm and Ciccotti, and each of them, . . . converted and wrongfully interfered with Scarf[f]'s possession of said monies."); CAC ¶ 191 ("Defendants, and each of them, who were aided and abetted by their employees, agents and representatives, including Barber and Burtzel, converted the funds[.]"). Nonetheless, Plaintiffs will be held to the position, as asserted in their opposition briefs, that these two claims "do ***not*** allege . . . that the Defendant banks, or their officers, directors, or managing agents, directly converted monies belonging to the Plaintiffs for their own use." Opp'n to Mots. of Wells Fargo, et al., at 16; Opp'n to Mot. of Bank of America at 14.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1   Thus, these cases do not provide grounds for granting Defendants' motions to dismiss this claim.

2         Wells Fargo, Intuit, CRI, Barber, Hvegholm, and Ciccotti also argue that Plaintiffs' claim

3   for conversion in connection with the "payroll scheme" should be dismissed because the claim

4   does not involve "a specific sum capable of identification." *Weiss v. Marcus*, 124 Cal. Rptr. 297,

5   303 (Ct. App. 1975). However, Defendants point to no authority establishing that the deposits to

6   the Wells Fargo accounts of Edward Scarff, Pentoga, and SSA from their earnings and income,

7   including investments, the sale of property, and employment income, that allegedly have been

8   converted by Huang do not constitute specific sums capable of identification. It is possible that

9   Plaintiffs have records, such deposit slips, investment account statements, bills of sale, or pay

10  stubs, that identify the specific sums alleged to have been embezzled. The Court does note,

11  though, that the CAC does not describe any sums belonging specifically to Nancy Scarff that

12  allegedly have been converted. Accordingly, Plaintiffs' claim for conversion in connection with

13  the "payroll scheme" will be DISMISSED as to Nancy Scarff. The motions of Wells Fargo,

14  Intuit, CRI, Barber, Hvegholm, and Ciccotti to dismiss this claim otherwise will be DENIED.

15  **F.      Fifth Claim for Relief: Negligence**

16        In their fifth claim for relief, Plaintiffs allege that Wells Fargo, Intuit, CRI, Barber,

17  Hvegholm, and Ciccotti are liable to all of them for negligence in connection with the alleged

18  "payroll scheme." Specifically, Plaintiffs allege that these six Defendants owed them various

19  duties regarding the provision of payroll services and payroll tax services and that they breached

20  those duties, causing damages.[24] In order to state a claim for negligence, Plaintiffs must allege

21  "(1) facts showing a duty of care in the defendant, (2) negligence constituting a breach of the

22  duty, and (3) injury to the plaintiff[s] as a proximate result." *Peter W. v. S.F. Unified Sch. Dist.*,

23  131 Cal. Rptr. 854, 857 (Ct. App. 1976). A duty of care may arise through a statute or by a

24  contract or may be "premised upon the general character of the activity in which the defendant

25

26        [24] Plaintiffs also mention once a purported duty in relation to a deed of trust on Edward

27  and Nancy Scarff's residence in Los Altos, California, *see* CAC ¶ 151, but then fail to elaborate

28  on any negligence claim with respect to the residence.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1  engaged, the relationship between the parties or even the interdependent nature of human

2  society." *J'Aire Corp. v. Gregory*, 157 Cal. Rptr. 407, 409 (Ct. App. 1979).

3      Wells Fargo, Intuit, CRI, Barber, and Ciccotti argue that Plaintiffs' claim for negligence

4  in connection with the "payroll scheme" should be dismissed as to Edward and Nancy Scarff, as

5  they were not parties to the "Business Services Processing Agreements" and thus have no basis

6  for asserting any duty owed to them regarding the payroll services provided thereunder. As

7  discussed above in relation to Plaintiffs' breach-of-contract claim, although Plaintiffs allege in

8  the CAC that Edward and Nancy Scarff, along with Pentoga and SSA, entered into the respective

9  agreements, the contracts attached to the CAC list only Pentoga and SSA as Wells Fargo's

10  "Customer[s]." Accordingly, this claim for negligence will be DISMISSED as to Edward and

11  Nancy Scarff.

12      Wells Fargo, Intuit, CRI, Barber, Hvegholm, and Ciccotti also argue that Plaintiffs' claim

13  for negligence in connection with the "payroll scheme" should be dismissed as to Pentoga and

14  SSA, because Plaintiffs have failed to adequately allege any duty or breach. Plaintiffs allege that

15  Defendants owed them a "duty to exercise reasonable and ordinary care in providing . . . payroll

16  services and payroll tax services, tax adjustments and other information that was submitted to the

17  Internal Revenue Service and/or other agencies," a "duty to follow federal and state banking laws

18  and regulations, best practices and standards in the industry, and their own policies and

19  procedures," and a "duty under the [Wells Fargo]-SSA and [Wells Fargo]-Pentoga Payroll

20  Agreements, to properly review, supervise, monitor and/or audit the payroll tax returns . . . to

21  ensure that the reporting of payroll taxes was timely and accurate, and in compliance with

22  reporting requirements for payroll taxes." CAC ¶¶ 151-52. Plaintiffs further delineate the

23  following duties that allegedly were owed to them by Defendants:

24          (1) process only payroll requests that were authorized by Scarff, SSA or Pentoga;
            (2) comply with federal and state banking laws, statutes, and regulations
25          governing payroll and payroll tax processing; (3) comply with their own policies,
            practices, and procedures concerning payroll and payroll tax processing; (4)
26          employ ethical and competent persons, agents, and subcontractors; (5)
            communicate with and notify Scarff, SSA and Pentoga of changes to corporate or
27          partnership tax returns submitted to the Internal Revenue Service; (6) obtain
            and/or verify appropriate authorizations to file tax returns on behalf of Plaintiffs;

28

1  and (7) review, supervise, monitor and/or audit payroll and payroll tax
2  irregularities, red flags and/or suspicious activities.

3  CAC ¶ 153. Defendants are alleged to have breached these duties by "fail[ing] to properly

4  review, supervise, monitor and/or audit payroll tax submissions that were made on behalf of

5  Scarff, SSA and Pentoga," namely Huang's unauthorized payroll "overpayments,"

6  "reimbursements," and embezzlement. CAC ¶ 152. This failure is alleged to have been a

7  "fail[ure] to exercise reasonable and ordinary care." CAC ¶ 153.

8      The Court concludes that Plaintiffs have failed to state a claim for negligence under any

9  duties imposed by the "Business Services Processing Agreements" between Wells Fargo and

10 Pentoga and SSA, respectively. As mentioned above, Huang is listed as a "contact[]" for both

11 Pentoga and SSA in those agreements, and her signature explicitly is authorized for the purpose

12 of "System Changes," "Stop Payment," and "Payroll Preparation." *See supra* note 10 and

13 accompanying text. Plaintiffs do not explain how processing payroll transactions authorized by

14 Huang purportedly on behalf of her employers, when the payroll services contracts themselves

15 indicate that Pentoga and SSA have given her such authority, constituted a failure to exercise

16 reasonable and ordinary care. Moreover, Plaintiffs cannot state a claim for negligence by

17 reference to duties allegedly imposed by *unspecified* statutes, regulations, industry standards and

18 best practices, and internal policies and procedures.[25] Turning to the three statutes they do

19 identify as a basis for their negligence claim, Plaintiffs' bare statement that Defendants violated

20 California's unfair competition law is insufficient, and the only named Defendant to whom 12

21 U.S.C. § 503 and 18 U.S.C. § 215 could apply is Barber, *see infra* Part II.G, but Plaintiffs do not

[25] In dismissing a previous claim for negligence against Wells Fargo because, among other things, Plaintiffs had referred to laws without specifying their identity, the Court stated that, "[c]learly, a second amended cross-complaint must be more definite than that." Order Re Wells Fargo, N.A.'s Mot. to Dismiss, Mot. to Strike Portions of, and Mot. for a More Definite Statement in Second Am. Cross-Compl. (July 22, 2004) at 7. Thus, Plaintiffs were on notice that the same principle would apply to their subsequent attempt to amend their complaint to state viable claims and that, if they again failed, they would not be given yet another opportunity to amend their complaint.

allege that Barber breached a duty to them by accepting bribes from Huang. *See* CAC ¶ 154. (In any event, as is discussed below, Edward Scarff, Pentoga, and SSA have specific statutory remedies against Barber. *See infra* Part II.G.) Finally, not only have Plaintiffs pointed to no case law establishing or even suggesting that Defendants had the duties to review, supervise, monitor, and audit the payroll transactions—and thus to detect Huang's unauthorized activities—that Plaintiffs claim they breached,[26] but the California Court of Appeal recently has declined to recognize a bank's "duty to supervise account activity or otherwise track frequent and/or large dollar transactions in deposit accounts" in the absence of "suspicious instruments," *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 56 Cal. Rptr. 2d 756, 762 (Ct. App. 1996). Accordingly, the claim for negligence in connection with the "payroll scheme" also will be DISMISSED as to Pentoga and SSA.

**G.    Sixth Claim for Relief: 12 U.S.C. § 503 and 18 U.S.C. § 215**

In their sixth claim for relief, Plaintiffs allege that Barber is liable to all of them pursuant to 12 U.S.C. § 503, which creates civil liability for a bank director or officer who knowingly violates or permits any of the bank's agents, officers, or directors to violate any of the provisions of 18 U.S.C. § 215 or other enumerated statutes.[27] 18 U.S.C. § 215 makes it a crime for an

---

[26] The three cases cited by Plaintiffs to support their position are not on point. *Copesky v. Superior Court*, in the context of a claim for breach of the implied duty of good faith and fair dealing—not a claim for negligence—disapproved of the characterization of a bank-depositor relationship as a "quasi-fiduciary" relationship, 280 Cal. Rptr. 338, 348 (Ct. App. 1991), but noted that a bank may undertake obligations that bring it into a "special relationship" with a customer, such as by offering "trust and other specifically fiduciary services," *id.* at 346 n.12. No trust or fiduciary services are involved in the instant case. *See infra* Part II.H. *Peterson Development Co. v. Torrey Pines Bank* simply quotes and discusses *Copesky* regarding the above matters. *See Peterson Dev. Co. v. Torrey Pines Bank*, 284 Cal. Rptr. 367, 377 (Ct. App. 1991). Lastly, *Bank of America v. Sanchez* held that a customer's relationship with a bank was such that the bank's fraudulent misrepresentation of the law furnished a ground for reformation of a contract. *See Bank of America v. Sanchez*, 38 P.2d 787 (Cal. Ct. App. 1934). *Sanchez* did not involve a claim of negligence.

[27] Because Plaintiffs have indicated in their opposition brief that they are withdrawing their claims against Hvegholm and Ciccotti pursuant to these federal statutes, Plaintiffs' sixth claim for relief will be DISMISSED as to Hvegholm and Ciccotti.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1   officer, director, employee, agent, or attorney of a financial institution to "corruptly solicit[] or

2   demand[] for the benefit of any person, or corruptly accept[] or agree[] to accept, anything of

3   value from any person, intending to be influenced or rewarded in connection with any business or

4   transaction of such institution." A bank director or officer who participates in or assents to such a

5   violation is personally liable for all damages sustained by any person as a result of the violation.

6   12 U.S.C. § 503.

7          Barber argues that this claim, which alleges liability in connection with the "payroll

8   scheme," should be dismissed because the factual allegations in the CAC regarding the "payroll

9   scheme" "nowhere mention[] Barber as an actor or participant." Mot. of Wells Fargo and Barber

10  to Dismiss and to Strike at 24. Not only is Barber incorrect in that assertion—the Court's own

11  review of the CAC reveals that she is mentioned by name in no fewer than ten of the twenty-six

12  paragraphs describing the operation and results of the "payroll scheme," *see* CAC ¶¶ 58, 62-66,

13  68-69, 73, 75—but the allegations that do appear in the CAC are sufficient to state a claim that

14  Barber accepted meals, gifts, and cash from Huang in exchange for her role in transferring funds

15  from the Wells Fargo accounts of Edward Scarff and Northcliff to the payroll accounts of

16  Pentoga and SSA for the purpose of funding Huang's payroll "overpayments" and reimbursing

17  the Pentoga and SSA payroll accounts for those "overpayments," all the while knowing that

18  Huang was entitled to only a specified, predetermined salary. The Court notes, however, that the

19  CAC does not describe any damage to Nancy Scarff, whose own bank accounts are not alleged to

20  have been used for the transfers by Barber. Accordingly, Plaintiffs' sixth claim for relief will be

21  DISMISSED as to Nancy Scarff. Barber's motion to dismiss this claim otherwise will be

22  DENIED.

23  **H.    Seventh Claim for Relief: Breach of Fiduciary Duty**

24         In their seventh claim for relief, Plaintiffs allege that Wells Fargo, Intuit, CRI, Barber,

25  Hvegholm, and Ciccotti are liable to all of them for breach of fiduciary duty. They explain in

26  their opposition brief that this claim alleges liability by these six Defendants "both as primary

27  violators and also as secondary violators." Opp'n to Mots. of Wells Fargo, et al., at 20. However,

28

19

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

the Court concludes that the *CAC*, as distinguished from Plaintiffs' legal argument, does not fairly allege secondary liability. Rather, the allegations are clear that the claim for breach of fiduciary duty is based upon fiduciary duties purportedly owed to Plaintiffs by Wells Fargo, Intuit, CRI, and their employees, which they—not Huang—are alleged to have assumed "[i]n agreeing to provide payroll and payroll tax services." CAC ¶ 166; *see also* CAC ¶¶ 167-68 (referencing alleged fiduciary duties of Wells Fargo, Intuit, CRI, Barber, Hvegholm, and Ciccotti, not fiduciary duties of Huang). As such, the Court will address Defendants' motions to dismiss this claim only as it relates to their liability as "primary violators."[28]

Wells Fargo, Intuit, CRI, Barber, Hvegholm, and Ciccotti argue that Plaintiffs' claim that these six Defendants breached their own fiduciary duties should be dismissed because Plaintiffs have failed to allege any facts that would give rise to a fiduciary duty owed by them to Plaintiffs. The elements of a cause of action for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach. *Pierce v. Lyman*, 3 Cal. Rptr. 2d 236, 240 (Ct. App. 1991). A fiduciary relationship "can arise when confidence is reposed by persons in the integrity of others, and if the latter voluntarily accepts or assumes to accept the confidence, he or she may not act so as to take advantage of the other's interest without that person's knowledge or consent." *Id.* The California Court of Appeal has observed that "[t]raditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal." *Wolf v. Superior Court*, 130 Cal. Rptr. 2d 860, 863 (Ct. App. 2003). The "essence" of a fiduciary relationship is that "the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." *Richelle L. v. Roman Catholic Archbishop*, 130 Cal. Rptr. 2d 601, 609 (Ct. App. 2003).

---

[28] Because this claim does not contain even a hint of an allegation of secondary liability and Plaintiffs were well aware that the CAC represented their final opportunity to amend their complaint to preserve their tenable claims, Plaintiffs will not be granted leave to amend the CAC to try to state a claim for aiding and abetting a breach of Huang's fiduciary duties.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1    Plaintiffs allege that Defendants' fiduciary duties arose from the "positions of trust and

2    confidence" they assumed in "agreeing to provide payroll and payroll tax services to [Edward

3    and Nancy] Scarff, SSA and Pentoga" and that Defendants "were thereby prohibited from

4    benefitting from their position as an agent in any manner detrimental to Plaintiffs." CAC ¶ 166.

5    They also suggest that the transfer of Edward Scarff's personal accounts to Wells Fargo's Private

6    Banking Group six years after Pentoga and SSA entered into their respective "Business Services

7    Processing Agreements" with Wells Fargo gave rise to fiduciary duties.[29] See CAC ¶ 80.

8    However, as discussed above, Edward and Nancy Scarff were not parties to the "Business

9    Services Processing Agreements," and they were not named as beneficiaries of those agreements.

10   See CAC, Exs. A & B. Thus, Edward and Nancy Scarff have no basis for their claim that

11   Defendants owed them any fiduciary duties in relation to the services provided pursuant to those

12   agreements, nor does Edward Scarff's alleged private banking relationship with Wells Fargo

13   have any bearing on the fiduciary duties that might arise from the "Business Services Processing

14   Agreements," which are not alleged to have any connection to the private banking services

15   provided to Edward Scarff. Accordingly, the claim for breach of fiduciary duty will be

16   DISMISSED as to Edward and Nancy Scarff.

17   As for Pentoga's and SSA's claim for breach of fiduciary duty, while Plaintiffs do appear

18   to allege more than the usual bank-depositor relationship (which normally does not give rise to a

19   fiduciary duty, see Copesky v. Superior Court, 280 Cal. Rptr. 338, 348 (Ct. App. 1991)),

20   Plaintiffs cite no authority for the proposition that a contractual relationship governing the

21   provision of payroll and payroll tax services gives rise to fiduciary duties.[30] The fact that

22   ————————————————

23   [29] It is unclear why Plaintiffs also discussed in their opposition brief an allegation
     regarding Edward Scarff's personal banking relationship with Comerica, when Comerica is not

24   named as a Defendant with respect to the claim for breach of fiduciary duty. See Opp'n to Mots.
     of Wells Fargo, et al., at 21.

25

26   [30] Although Plaintiffs point out that the California Court of Appeal has observed in a
     footnote that "[m]any banks affirmatively offer trust and other specifically fiduciary services,"

27   Copesky, 280 Cal. Rptr. at 346 n.12, no such trust or fiduciary services have been alleged

28   regarding Defendants' payroll and payroll tax services. The other case cited by Plaintiffs, Bank of

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1   Plaintiffs allege conclusorily that their contractual relationship with Defendants was one of "trust

2   and confidence" or "agency" does not preclude dismissal for failure to state a claim where the

3   factual allegations taken as a whole do not describe a fiduciary relationship or suggest unequal

4   positioning between the parties essential to the existence of a fiduciary relationship. *See Wolf*,

5   130 Cal. Rptr. 2d at 863; *Richelle L.*, 130 Cal. Rptr. 2d at 609. Accordingly, the claim for breach

6   of fiduciary duty also will be DISMISSED as to Pentoga and SSA.

7   **I.    Eighth Claim for Relief: Violations of Unfair Competition Law**

8          In their eighth claim for relief, Plaintiffs allege that Wells Fargo, Intuit, and CRI are liable

9   to all of them for violations of California's unfair competition law.[31] Section 17200 of the

10  California Business and Professions Code prohibits "unfair competition," which means "any

11  unlawful, unfair or fraudulent[32] business act or practice and unfair, deceptive, untrue or

12  misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of

13  Part 3 of Division 7 of the Business and Professions Code," the latter of which governs false

14  advertising. Cal. Bus. & Prof. Code § 17200. The unfair competition law "borrows violations of

15  other laws and treats them as unlawful practices that the unfair competition law makes

16  independently actionable." *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d

17  527, 539-40 (Cal. 1999) (internal quotation marks omitted). In addition, the unfair competition

18  law may deem a business practice to be "unfair" even if it is not specifically proscribed by some

19  ───────────────

20  *America v. Sanchez*, 38 P.2d 787, 789-90 (Cal. Ct. App. 1934), has limited value in the present
    context, as it discusses "confidential or fiduciary relations" in a sense that is broader than the
21  "strict sense of those terms as ordinarily understood to apply to persons in various legal relations
    in which the law imports a fiduciary relationship," and the case does not involve a claim for
22  breach of fiduciary duty.

23
        [31] The Court does not address the motion to dismiss this claim by Hvegholm, who is not
24  named as a Defendant with respect to the claim for violations of California's unfair competition
    law.
25

26      [32] The term "fraudulent" in the unfair competition law requires only a showing that
    members of the public are "likely to be deceived." *Olsen v. Breeze, Inc.*, 55 Cal. Rptr. 2d 818,
27  822 (Ct. App. 1996) (internal quotation marks omitted). It does not refer to the common law tort
    of fraud. *Id.*

28

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1    other law. *Id.* at 540. Plaintiffs who prevail in bringing a claim under the unfair competition law

2    generally are limited to injunctive relief and restitution; they may not receive damages or

3    attorney's fees. *Id.* at 539. The California Supreme Court recently reaffirmed that an action under

4    the unfair competition law is not "'an all-purpose substitute for a tort or contract action'" and that

5    the "'overarching legislative concern [was] to provide a streamlined procedure for the prevention

6    of ongoing or threatened acts of unfair competition.'" *Korea Supply Co. v. Lockheed Martin

7    Corp.*, 63 P.3d 937, 948 (Cal. 2003) (quoting *Cortez v. Purolator Air Filtration Prods. Co.*, 999

8    P.2d 706, 712-13 (Cal. 2000)).

9        Wells Fargo, Intuit, and CRI argue that Plaintiffs' claim for violations of California's

10   unfair competition law should be dismissed because Plaintiffs' allegations fail to identify how

11   Defendants' business acts or practices were "unlawful, unfair or fraudulent." Cal. Bus. & Prof.

12   Code § 17200. The Court agrees. The CAC merely pleads in conclusory fashion that Defendants'

13   "business acts and practices . . . constituted and constitute a continuous and continuing course of

14   conduct of unfair business by means of unfair, unlawful, and/or fraudulent business acts or

15   practices" within the meaning of California's unfair competition law. CAC ¶ 174. The conduct of

16   Wells Fargo, Intuit, and CRI is alleged to have "violated federal statutes and regulations, state

17   common law, and industry standards and best practices" and to "threaten[] an incipient violation

18   of California's consumer protection laws," but the only laws identified specifically are (1) the

19   unfair competition law itself and (2) 12 U.S.C. § 503 and 18 U.S.C. § 215, which impose civil

20   and criminal liability on bank directors, officers, employees, agents, and/or attorneys but not on

21   banks themselves or on payroll services companies. CAC ¶¶ 175-76. Finally, the CAC concludes

22   without elaboration that "Defendants' conduct, business affairs and practices were fraudulent

23   because they were likely to deceive consumers." CAC ¶ 176. No specific acts or practices are

24   alleged to have constituted the purported violations of the unfair competition law in the section

25   of the CAC laying out this claim.

26       Plaintiffs attempt to overcome these shortcomings by arguing that the CAC "alleges a

27   course of conduct over a twelve year period of unfair, unlawful and deceptive business practices

28

1   by Defendants" and that "[o]ne need look no further than the Introduction of the [CAC] to see

2   *examples* of conduct giving rise to the violation of [the unfair competition law]." Opp'n to Mots.

3   of Wells Fargo, et al., at 23 (emphasis added). However, incorporation by reference of the

4   preceding sixty pages of allegations—allegations that largely are meant to state contract and tort

5   claims—to support the conclusory allegations of the claim for violations of the unfair

6   competition law, *see* CAC ¶ 172, is insufficient and particularly is unacceptable in the context of

7   Plaintiffs' consolidated amended complaint. Wells Fargo, Intuit, and CRI should not be left to

8   guess which acts and practices are alleged to violate which prongs of the unfair competition law

9   and/or other applicable laws.[33] *See Khoury v. Maly's of California, Inc.*, 17 Cal. Rptr. 2d 708,

10  712-13 (Ct. App. 1993) (holding that demurrer as to claim for unfair business practices was

11  sustained properly where second amended complaint "identifie[d] no particular section of the

12  statutory scheme which was violated and fail[ed] to describe with any reasonable particularity the

13  facts supporting violation"). Accordingly, this claim for violations of California's unfair

14  competition law will be DISMISSED as to all named Defendants.[34]

15  **J.      Ninth Claim for Relief: Fraud and Deceit**

16          In their ninth claim for relief, Plaintiffs allege that Wells Fargo, Comerica, Bank of

17  America, Barber, and Burtzel[35] are liable to all of them for fraud and deceit in connection with

18  both the alleged "payroll scheme" and the alleged "credit line scheme." They explain in their

19

20

21          [33] Since Plaintiffs' opposition brief lists only examples of the conduct alleged to give rise
    to violations of California's unfair competition law, the scope of Plaintiffs' claim is not clear
22  even after briefing and a hearing on Defendants' motions to dismiss.

23          [34] Although it need not reach Defendants' additional arguments that, under the facts as
    alleged in the CAC, Plaintiffs are not entitled to the limited remedies afforded by the unfair
24  competition law, the Court notes that it is unclear why Plaintiffs believe they are entitled to
    "restitution" from Wells Fargo, Intuit, and CRI of money embezzled by Huang or an injunction
25  against further conspiracy with Huang, who no longer is employed by Plaintiffs and faces
    imminent imprisonment as a result of her criminal conviction.
26

27          [35] Burtzel is alleged to have been a vice president in Comerica's Private Banking
    Department.
28

24

opposition brief that this claim is premised on secondary rather than direct liability[36] and that these five Defendants are alleged to have conspired with and/or aided and abetted Huang in carrying out the two schemes.

As an initial matter, the Court notes that, although Plaintiffs attempt in this claim for relief to assert liability by the "Credit Line Scheme Defendants" (i.e., Wells Fargo, Comerica, Bank of America, Barber, and Burtzel) not only for the "credit line scheme" but also for the "payroll scheme," the Court is unable to find allegations in the CAC linking the two schemes at a factual level for purposes of liability. That is, it is entirely possible, based on Plaintiffs' description of the two schemes, for the "Credit Line Scheme Defendants" to have purposefully or knowingly facilitated or aided Huang's allegedly unauthorized activities regarding the lines of credit (e.g., establishing new lines of credit in Edward Scarff's name, renewing and extending Edward Scarff's existing lines of credit, drawing down funds from the lines of credit and depositing them in Edward Scarff's personal account at Wells Fargo) without any awareness of the acts alleged to constitute the "payroll scheme," including even the alleged use of funds from the lines of credit to cover up Huang's payroll "overpayments." Moreover, with the exception of the allegations with respect to Wells Fargo and Barber—parties alleged in separate claims for relief to be liable for their direct role in the "payroll scheme"—the Court has found no allegations in the CAC that the "Credit Line Scheme Defendants" had, at a minimum, any knowledge of the "payroll scheme."[37] Accordingly, the ninth claim for relief will be deemed LIMITED to alleging the named Defendants' liability for losses from the "credit line scheme."

//

---

[36] *See supra* note 18.

[37] Plaintiffs' general and conclusory allegation in the ninth claim for relief that "Defendants, and each of them, knew the *wrongful and illegal acts* being perpetrated as against the Scarff Plaintiffs, and each of them, and/or armed with such knowledge, concealed important information from Plaintiffs, and further conspired with, aided and abetted, and/or otherwise knowingly participated in the *deception and fraudulent payroll scheme and credit scheme* perpetrated by Huang," CAC ¶ 184 (emphasis added), is insufficient to establish the requisite knowledge of the "payroll scheme," much less any heightened mental state.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

Proceeding to Defendants' motions to dismiss, Wells Fargo, Comerica, Bank of America, Barber, and Burtzel[38] argue that Plaintiffs' claim for fraud and deceit in connection with the "credit line scheme" should be dismissed as to Nancy Scarff, Pentoga, and SSA, as they have no standing to assert the claim. Although Plaintiffs allege generally that all of them were victimized by the "credit line scheme," the lines of credit are alleged to have been only in Edward Scarff's name, raising the question of what rights with respect to the lines of credit Nancy Scarff, Pentoga, and SSA may be trying to assert. Furthermore, although Plaintiffs argue in their opposition brief that their alleged damages of over $9 million from the "credit line scheme" consist of "fees, penalties, interest, and other sums transferred out of accounts belonging to *Mr. and Mrs. Scarff, SSA, Pentoga, and/or Northcliff*" and that the "sources of these outlays . . . are monies earned by *Plaintiffs* from investments, the sale of property, employment, and the profitable enterprise of the Scarff corporate entities," Opp'n to Mots. of Wells Fargo, et al., at 11 (emphasis added); *see also* Opp'n to Mot. of Bank of America at 10-11, none of the more than thirty paragraphs of the CAC cited by Plaintiffs to support this argument, *see* Opp'n to Mots. of Wells Fargo, et al., at 11 (citing CAC ¶¶ 1, 7, 77-106, 117); Opp'n to Mot. of Bank of America at 11 (same), specifically identifies the *source* of the funds lost in the "credit line scheme" as anything other than Edward Scarff's "personal accounts" at Wells Fargo, CAC ¶ 79.[39] Accordingly, the claim for fraud and deceit in connection with the "credit line scheme" will be DISMISSED as to Nancy Scarff, Pentoga, and SSA.

Wells Fargo, Comerica, Bank of America, Barber, and Burtzel also argue that Plaintiffs' claim for fraud and deceit in connection with the "credit line scheme" should be dismissed as to

---

[38] All arguments attributed to Burtzel in this Order are asserted simply by way of her joinder in Comerica's motion. *See supra* note 1.

[39] Plaintiffs' general allegation, made in the course of summarizing their damages, that all four of the "Scarff Plaintiffs have unknowingly paid substantial fees, penalties, and interest" to Wells Fargo, Comerica, and Bank of America, CAC ¶ 117, is unsupported by any specific allegations of fact in the description of the operation of the "credit line scheme" and does not comport with the specific allegation that Edward Scarff is the only borrower named on the lines of credit.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1   Edward Scarff, because he has failed to allege cognizable damages. However, Plaintiffs appear to

2   have cured the defect found in past versions of their complaint by alleging damages separate

3   from the funds drawn down from the lines of credit. Specifically, they allege damages of over $9

4   million as a result of payments of "substantial fees, penalties, and interest" to Wells Fargo,

5   Comerica, and Bank of America in connection with the lines of credit. CAC ¶ 117. As mentioned

6   above, Wells Fargo, Comerica, and Bank of America are alleged to have obtained this money

7   from Edward Scarff's personal accounts at Wells Fargo. *See* CAC ¶ 79. These allegations of loss

8   are sufficient to overcome Defendants' motions to dismiss on the ground that Edward Scarff has

9   not adequately alleged the element of damages.

10        A second ground suggested by Wells Fargo, Bank of America, and Barber for dismissal

11   of this claim as to Edward Scarff is Plaintiffs' purported failure to allege Huang's underlying

12   fraud with the requisite particularity. As with the third claim for relief, Defendants are correct

13   that the CAC contains no *claim* for fraud and deceit against *Huang*. However, as it did with the

14   third claim for relief, the Court concludes that Plaintiffs' allegations, while not a model of

15   pleading, are sufficient in the context of a motion to dismiss to put Defendants on notice of the

16   nature of the fraudulent acts Defendants are alleged to have assisted. Huang is alleged to have

17   been employed by Edward Scarff, *see* CAC ¶ 31, and to have had "control over . . . some of Mr.

18   Scarff's personal finances," CAC ¶ 49. In that role, she is alleged to have drawn down on his

19   lines of credit, renewed his existing lines of credit, increased the amounts and extended the

20   expiration dates of his existing lines of credit, and opened new lines of credit in his name without

21   his permission or authorization. *See* CAC ¶ 79. All of the lines of credit at issue in this case are

22   identified in the CAC. Huang also is alleged to have forged Edward Scarff's signature on certain

23   documents establishing, renewing, and extending the lines of credit and to have forged a deed of

24   trust on Edward and Nancy Scarff's residence in Los Altos, California, that was used as security

25   for a $2 million "Platinum Equity Line of Credit" issued by Wells Fargo, *see* CAC ¶ 88. The

26   funds drawn down from the lines of credit without Edward Scarff's authorization, knowledge, or

27   consent are alleged to have been deposited into his personal account at Wells Fargo. *See* CAC ¶

28

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

8. To cover up her actions, Huang is alleged to have "kept the keys to file cabinets containing . . . Mr. Scarff's personal financial records" and to have locked the cabinets when she was out of the office, "ensuring that no one else—including Mr. Scarff—would have access to these files, or be alerted to their contents." CAC ¶ 50. These allegations reveal Plaintiffs' theories of Huang's concealment well enough to overcome Defendants' motions to dismiss on the ground that Plaintiffs have failed to present adequate allegations of Huang's fraud. As noted earlier, Defendants will have ample opportunity to develop the details of this claim through discovery.

Finally, Wells Fargo, Comerica, Bank of America, Barber, and Burtzel variously challenge the sufficiency of Plaintiffs' factual allegations showing (1) the formation and operation of a conspiracy, (2) their intent to conspire with Huang, (3) their actual knowledge of Huang's wrongful conduct, and/or (4) their assistance of Huang's alleged fraud.[40] In general terms, Huang is alleged to have conspired with or have been aided and abetted by Wells Fargo, Comerica, and Bank of America to "secure and/or extend credit in Mr. Scarff's name," CAC ¶ 77, and to obtain unauthorized advances on the lines of credit without Edward Scarff's knowledge or consent. The CAC contains allegations that Wells Fargo, Barber, and Wells Fargo Vice President Richard Starratt ("Starratt"),[41] Comerica and Burtzel, and Bank of America and its vice president, John Cullison ("Cullison"),[42] took the following actions with the knowledge that the lines of credit were "for the sole and exclusive benefit of Mr. Scarff, and that only Mr. Scarff was authorized to draw down" funds from them: (1) "[f]ail[ed] to ensure the validity and authenticity of initials, signatures, and authorizations" on credit-line documents or to "ask Scarff

---

[40] In addition, Bank of America cites *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 776-77 (9th Cir. 2002), for the proposition that "[a]llegations that Bank of America's employee participated in a conspiracy with non-employees to defraud or convert funds are insufficient to state a claim against Bank of America without allegations that the purpose of the conspiracy was to benefit Bank of America," Reply of Bank of America at 3 n.1. However, as *Oki* involves the application of Oregon law in the context of a RICO claim, the Court does not address this argument.

[41] Starratt is not named as a defendant.

[42] Cullison is not named as a defendant.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1   personally whether [Huang's] acts [in connection with the lines of credit] were actually

2   authorized or permitted by him," (2) "[w]rongfully permitt[ed]" Huang to draw down money

3   from the lines of credit and to transfer millions of dollars in Edward Scarff's name to his

4   personal accounts at Wells Fargo "without first obtaining Mr. Scarff's permission, authorization,

5   or consent," (3) "[s]ecret[ed]" the "credit line scheme" from Edward Scarff "by means of

6   unauthorized telephonic and/or electronic withdrawals by Huang," and (4) "[r]efus[ed] and/or

7   fail[ed] to communicate directly with Mr. Scarff or personally alert him" to Huang's

8   unauthorized activities. CAC ¶¶ 79, 90, 99, 105.

9       In addition, Wells Fargo, Barber, and Starratt and Comerica and Burtzel are alleged to

10  have mailed and/or delivered account statements and/or credit-line documents to only Huang,

11  Barber, or Burtzel "in an effort to hide and/or conceal their wrongdoing from Mr. Scarff," CAC

12  ¶¶ 90, 99, and Comerica and Burtzel are alleged to have altered credit-line documents[43] and

13  falsely represented having witnessed Edward Scarff sign "credit and loan documents,"[44] CAC ¶

14  99. Barber, Starratt, Burtzel, and Cullison are alleged to have accepted "kickbacks, gifts and

15  bribes from Huang" for their part in the "credit line scheme," CAC ¶¶ 90, 99, 105, which

16  "compromised their independence and/or impartiality," CAC ¶ 180. Moreover, Defendants are

17  alleged to have known "the wrongful and illegal acts being perpetrated as against the Scarff

18  Plaintiffs," CAC ¶ 184, and to have acted with both the "purpose or intent of concealing and/or

19  deceiving the Scarff Plaintiffs as to the true nature, scope and/or amount of the financial

20  transactions being processed through his accounts," CAC ¶ 182, and the "intent to induce"

21

22  _____

23  [43] Comerica is alleged to have known through Burtzel that its credit line documentation
    was altered, without Edward Scarff's knowledge or consent, to include the words "or my

24  assistant Carol Huang," to add a security code, and to include the initials "ES" and "CH" on a
    line for initials. CAC ¶ 92.

25  [44] Burtzel allegedly has testified that, although she signed a guaranty on a Comerica line

26  of credit as a witness to Edward Scarff's signature, Edward Scarff did not personally appear
    before her that day, and she did not actually witness his signature. *See* CAC ¶ 97. The guaranty

27  allegedly listed the res of the Edward and Nancy Scarff Family Trust as security for the line of
    credit. *See id.*

28

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1    Plaintiffs to maintain lines of credit with Wells Fargo, Comerica, and Bank of America, CAC ¶

2    185. Although these allegations are weak, the Court concludes that they are sufficient to

3    overcome Defendants' motions to dismiss under the liberal Rule 12(b)(6) standard.

4         In summary, Plaintiffs' claim for fraud and deceit in connection with the "credit line

5    scheme" will be DISMISSED as to Nancy Scarff, Pentoga, and SSA and will be LIMITED to

6    alleging liability for losses from the "credit line scheme." The motions of Wells Fargo,

7    Comerica, Bank of America, Barber, and Burtzel to dismiss this claim otherwise will be

8    DENIED.

9    **K.    Tenth Claim for Relief: Conversion**

10        In their tenth claim for relief, Plaintiffs allege that Wells Fargo, Comerica, and Bank of

11   America are liable to all of them for conversion in connection with the alleged "credit line

12   scheme." They explain in their opposition brief that this claim is premised on secondary rather

13   than direct liability[45] and that these three Defendants are alleged to have conspired with and/or

14   aided and abetted Huang in converting "funds which Scarff, SSA and Pentoga owned and/or had

15   the right to possess." CAC ¶ 191.

16        This claim fails for one of the same reasons that Plaintiffs' claim for conversion has been

17   dismissed previously: Plaintiffs have not alleged cognizable damages. Plaintiffs allege elsewhere

18   in the CAC (i.e., other than in the specific section laying out their tenth claim for relief) that their

19   damages from the "credit line scheme" consist of "substantial fees, penalties, and interest" paid

20   to Wells Fargo, Comerica, and Bank of America from Edward Scarff's personal accounts at

21   Wells Fargo in connection with the lines of credit. CAC ¶ 117. Since these funds are alleged to

22   have been taken *by Wells Fargo, Comerica, and Bank of America*, they cannot have been the

23   funds allegedly converted *by Huang* with the agreement and/or assistance of Defendants. Thus,

24   the funds that Plaintiffs must be alleging were converted through the "credit line scheme" under

25   their theory of secondary liability must have been funds allegedly drawn down from Edward

26   Scarff's lines of credit and subsequently embezzled by Huang. However, the Court previously

27   _____

28        [45] *See supra* note 23.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1   has ruled that any property thus converted by Huang would have been that of Wells Fargo,

2   Comerica, and Bank of America, not that of Plaintiffs. *See* Order Re Wells Fargo, N.A.'s Mot. to

3   Dismiss, Mot. to Strike Portions of, and Mot. for a More Definite Statement in Second Am.

4   Cross-Compl. (July 22, 2004) at 5-6. As Plaintiffs do not have a cognizable claim against Huang

5   to recover the funds she converted that belonged to Wells Fargo, Comerica, and Bank of

6   America, Plaintiffs clearly do not have a cognizable claim against Wells Fargo, Comerica, and

7   Bank of America for conspiring with or aiding and abetting Huang in that same alleged

8   conversion. Accordingly, the claim for conversion in connection with the "credit line scheme"

9   will be DISMISSED as to all named Defendants.

10  **L.    Eleventh Claim for Relief: Negligence**

11          In their eleventh claim for relief, Plaintiffs allege that Wells Fargo, Comerica, Bank of

12  America, and Burtzel are liable to all of them for negligence in connection with the alleged

13  "credit line scheme." Specifically, Plaintiffs allege that these four Defendants owed them various

14  duties regarding the lines of credit[46] and that they breached those duties,[47] causing damages.

15

16          [46] The alleged duties include the following: (1) to "inspect, negotiate, and make
17  reasonable inquiry with regard to opening, extending, renewing, and increasing lines of credit
    and/or loans in Plaintiffs' names, and . . . with regard to disbursements, transfers, payments, and
18  withdrawals made from lines of credit and/or loans in Plaintiffs' names," (2) "to follow federal
    and state banking laws and regulations, standard practices in the industry, and their own policies
19  and procedures," and (3) "to employ fit and/or qualified employees to handle the Scarff
    Plaintiffs' financial affairs." CAC ¶ 197. The only statutes identified are California's unfair
20  competition law, 12 U.S.C. § 503, and 18 U.S.C. § 215. *See* CAC ¶ 199. No regulations, industry
21  practices, or internal policies and procedures are specified.

22          [47] Defendants are alleged to have "failed to exercise reasonable and ordinary care in the
    underwriting process, opening, extending, renewing and/or increasing the lines of credit and/or
23  loans in Plaintiffs' names, and in managing, monitoring, making disbursements, transfers,
24  withdrawals, and payments under the lines of credit and/or loans," including by "(1) taking bribes
    and kickbacks; (2) failing to comply with federal and state banking laws and regulations; (3)
25  failing to comply with internal policies and procedures; (4) failing to comply with security
    procedures; (5) failing to comply with Plaintiffs' express instructions; (6) failing to follow
26  standard of care in the industry; (7) failing to adequately supervise employees and agents; (8)
27  failing to verify that payments, transfers and/or other transactions were authorized by Plaintiffs;
    (9) failing to verify that renewals, increases, extensions and/or the opening of new lines of credit
28

31

1    Wells Fargo, Comerica, Bank of America, and Burtzel argue that Plaintiffs' claim for

2  negligence in connection with the "credit line scheme" should be dismissed as to Nancy Scarff,

3  Pentoga, and SSA, as they have no standing to assert the claim. For the same reasons as

4  discussed above in relation to Plaintiffs' claim for fraud and deceit in connection with the "credit

5  line scheme," this claim for negligence will be DISMISSED as to Nancy Scarff, Pentoga, and

6  SSA.

7    Wells Fargo, Comerica, Bank of America, and Burtzel also argue that Plaintiffs' claim for

8  negligence in connection with the "credit line scheme" should be dismissed as to Edward Scarff,

9  because he has failed to allege cognizable damages. However, as discussed above in relation to

10  Plaintiffs' claim for fraud and deceit in connection with the "credit line scheme," Plaintiffs

11  appear to have cured the defect found in past versions of their complaint by alleging damages

12  separate from the funds drawn down from the lines of credit. Plaintiffs' theory appears to be that,

13  if Defendants had not acted negligently, the lines of credit would not have been opened,

14  extended, renewed, and/or increased without Edward Scarff's knowledge or consent, and money

15  would not have been taken from Edward Scarff's personal accounts at Wells Fargo by Wells

16  Fargo, Comerica, and Bank of America in order to pay fees, penalties, and interest associated

17  with the lines of credit. These allegations of loss are sufficient to overcome Defendants' motions

18  to dismiss on the ground that Edward Scarff has not adequately alleged the element of damages.

19    Finally, Comerica and Burtzel argue that this claim should be dismissed as to Edward

20  Scarff because *Comerica* did not owe him a "duty to monitor his *Wells Fargo* account or

21  Huang's activities *after* the loan advances were made." Comerica's Reply at 7-8 (emphasis

22  added). However, this argument seems to be based on Comerica's mistaken belief that the

23  damages alleged are the loss of the funds drawn down from the lines of credit and its assertion

24  that there can be no claim for negligence when funds are deposited into a borrower's own

25  account. As Edward Scarff alleges duties and damages different from the ones that seem to

26  _____

27  were authorized by Plaintiffs; (10) failing to provide Plaintiffs with account statements; [and]

28  (11) failing [to] communicate with and keep Plaintiffs informed." CAC ¶¶ 198-99.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1   underlie Comerica's argument, this argument is insufficient as a ground for dismissing this

2   claim.[48]

3       Accordingly, Plaintiffs' claim for negligence in connection with the "credit line scheme"

4   will be DISMISSED as to Nancy Scarff, Pentoga, and SSA, as discussed above. The motions of

5   Wells Fargo, Comerica, Bank of America, and Burtzel to dismiss this claim otherwise will be

6   DENIED.

7   **M.   Twelfth Claim for Relief: 12 U.S.C. § 503 and 18 U.S.C. § 215**

8       In their twelfth claim for relief, Plaintiffs allege that Barber[49] is liable to all of them

9   pursuant to 12 U.S.C. § 503 and 18 U.S.C. § 215 in connection with the alleged "credit line

10  scheme."[50] Barber argues that this claim should be dismissed because Plaintiffs have not alleged

11  cognizable damages. For the reasons stated above with respect to the ninth claim for relief,

12  Barber is correct as to Nancy Scarff, Pentoga, and SSA. *See supra* p. 26. However, Barber is

13  incorrect that Edward Scarff has not alleged cognizable damages sufficiently to overcome her

14  motion to dismiss. As discussed above, Edward Scarff has alleged losses consisting of fees,

15  penalties, and interest paid to Wells Fargo out of his own personal accounts in connection with

16  the Wells Fargo lines of credit. Plaintiffs also allege that Barber accepted gifts and cash from

17  Huang in exchange for her role in helping Huang to obtain unauthorized advances from the Wells

18  Fargo lines of credit that generated the fees, penalties, and interest that Edward Scarff seeks to

19

20      [48] The Court notes that, although Defendants did not move to dismiss Plaintiffs' claim for

21  negligence in connection with the "credit line scheme" on the ground that the duties actually

22  asserted by Plaintiffs do not exist as a matter of law, instead directing the bulk of their arguments

23  to the issue of damages, this matter may be raised in Defendants' anticipated motions for
summary judgment.

24      [49] In their twelfth claim for relief, Plaintiffs also allege that Burtzel is liable to all of them

25  pursuant to 12 U.S.C. § 503 and 18 U.S.C. § 215. Although she mentions in her notice of joinder
with Comerica's motions to dismiss and strike that Plaintiffs have no support for their claim,

26  Burtzel does not appear to move to dismiss the claim.

27      [50] Plaintiffs also allege Barber's liability pursuant to these two statutes in connection with

28  the "payroll scheme." *See supra* Part II.G.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1    recover. Accordingly, Plaintiffs' twelfth claim for relief will be DISMISSED as to Nancy Scarff,

2    Pentoga, and SSA.[51] Barber's motion to dismiss this claim otherwise will be DENIED.

3    **N.    Thirteenth Claim for Relief: Violations of Unfair Competition Law**

4         In their thirteenth claim for relief, Plaintiffs allege that Wells Fargo, Comerica, and Bank

5    of America are liable to all of them for violations of California's unfair competition law. The

6    allegations laying out the thirteenth claim for relief are virtually identical to those laying out

7    Plaintiffs' eighth claim for relief, which alleges violations of California's unfair competition law

8    by Wells Fargo, Intuit, and CRI, and they are insufficient for the same reasons as discussed

9    above. *See supra* Part II.I. Accordingly, this claim will be DISMISSED as to all named

10   Defendants.

11   **O.    Fourteenth Claim for Relief: Slander of Title**

12        In their fourteenth claim for relief, Plaintiffs allege that Fidelity is liable to all of them for

13   slander of title based on its recordation of a forged deed of trust on Edward and Nancy Scarff's

14   residence in Los Altos, California ("Los Altos residence").[52] In *Gudger v. Manton*, the California

15   Supreme Court adopted the definition of the tort of slander of title from section 624 of the

16   Restatement of Torts:

17        "One who, without a privilege to do so, publishes matter which is untrue and
         disparaging to another's property in land . . . under such circumstances as would
18       lead a reasonable man to foresee that the conduct of a third person as purchaser or
         lessee thereof might be determined thereby is liable for pecuniary loss resulting to
19       the other from the impairment of vendibility thus caused."

20   *Gudger v. Manton*, 134 P.2d 217, 220 (Cal. 1943) (quoting section 624 of the Restatement of

21   _____

22        [51] Although Burtzel has not moved to dismiss this claim, the Court observes that the
     allegations in the CAC cannot support the claim against Burtzel as asserted by Nancy Scarff,
23   Pentoga, and SSA for the same reasons they fail with respect to the claim against Barber. Thus,
     the dismissal of the twelfth claim for relief as to Nancy Scarff, Pentoga, and SSA applies to the
24   claims against both Barber and Burtzel.

25        [52] In their fourteenth claim for relief, Plaintiffs also allege that Wells Fargo is liable to all
26   of them for slander of title. Wells Fargo does not move to dismiss this claim. However, the Court
     observes that there are no factual allegations in the CAC suggesting that Pentoga or SSA has
27   standing to bring this claim against Wells Fargo. Accordingly, this claim as asserted against
     Wells Fargo will be DISMISSED as to Pentoga and SSA.

28

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

Torts), *overruled on other grounds by Albertson v. Raboff*, 295 P.2d 405 (Cal. 1956). Sections

623A, 624, and 633 of the Second Restatement of Torts subsequently have been held to

> further refine the definition so it is clear . . . that there must be (a) a publication (§
> 623A, subd. (a)), (b), which is without privilege or justification and thus with
> malice, express or implied (*Gudger v. Manton*, *supra*, 21 Cal. 2d 537, 544, 134
> P.2d 217; *Fearon v. Fodera*, *supra*, 169 Cal. 370, 380-381, 148 P. 200), and (c) is
> false, either knowingly so or made without regard to its truthfulness (§ 623A,
> subd. (b)), and (d) causes direct and immediate pecuniary loss (§§ 623A, comm.
> (f), 633, comm. (k)).

*Howard v. Schaniel*, 169 Cal. Rptr. 678, 682 (Ct. App. 1980).

Fidelity argues that Plaintiffs' claim for slander of title should be dismissed because

Plaintiffs have failed to plead, among other things, either knowledge of falsity or reckless

disregard for falsity. The Court agrees. Wells Fargo is alleged to have caused Fidelity to record a

forged deed of trust on Edward and Nancy Scarff's Los Altos residence. *See* CAC ¶ 217. Wells

Fargo allegedly obtained the deed of trust by forgery in order to secure a $2 million line of credit

and then caused Fidelity to record the deed of trust "knowing that it was forged, and/or without

regard for its truth."[53] CAC ¶¶ 218-19, 221. Huang is alleged to have forged Edward Scarff's

signature, and Huang's driver is alleged to have obtained a notary's stamp to accompany the

forged signature.[54] *See* CAC ¶ 219. The notary's purported signature and printed name on the

deed of trust do not match the spelling of his last name on his notary stamp.[55] *See* CAC ¶ 221. At

one point, Fidelity allegedly advised Wells Fargo that the deed of trust, as originally prepared by

Wells Fargo, could not be recorded, because it erroneously identified the Scarffs' residence in

San Francisco County rather than in Santa Clara County. *See id*. Wells Fargo allegedly responded

to this information by crossing out the incorrect county, typing "Santa Clara County" on the

---

[53] The context suggests that this allegation of knowledge refers to Wells Fargo and not to
Fidelity.

[54] Plaintiffs allege that Kulwant Johl, the notary whose stamp appears on the deed of trust,
has testified under oath that his signature on the deed of trust was forged and that he did not
notarize Edward Scarff's signature. *See* CAC ¶ 222.

[55] While the stamp shows the notary's last name as "Johl," the purported signature and
printed name use the spelling "Johal." *See* CAC ¶ 88.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1    document, and then causing Fidelity to record the interlineated deed of trust. *See id*. Plaintiffs

2    allege that Fidelity should have foreseen that recordation of the forged deed of trust would cause

3    a reduction in value of the Los Altos residence. *See* CAC ¶ 224.

4            Nowhere do Plaintiffs allege explicitly that Fidelity recorded the deed of trust knowing

5    that it was false. Moreover, the pleaded facts do not allege sufficiently that Fidelity recorded the

6    deed of trust with "reckless disregard of its truth or falsity." Restatement (Second) of Torts §

7    623A (1977). At most, Fidelity is alleged to have recorded a deed of trust at the direction of

8    Wells Fargo, after Wells Fargo apparently corrected an error identified by Fidelity, without

9    having noticed that Edward Scarff's signature was forged or that there was a one-letter difference

10   in how the notary's last name was spelled on his stamp and in his purported signature and printed

11   name. No other facts are pleaded that would suggest that Fidelity knew of the forgeries and thus

12   the falsity of the deed of trust or acted with reckless disregard of its falsity. Accordingly, the

13   claim for slander of title will be DISMISSED as to Fidelity.[56]

14   **P.      Fifteenth Claim for Relief: Declaratory Relief**

15           In their fifteenth claim for relief, Plaintiffs seek a declaratory judgment that they are not

16   liable to Wells Fargo, Comerica, or Bank of America pursuant to the lines of credit, loans,

17   guaranties, or promissory notes attached as Exhibit F to the CAC, because they allegedly "were

18   never authorized and not executed by Plaintiffs." CAC ¶ 230. In addition, pursuant to this claim,

19   Plaintiffs appear to seek (1) to enjoin Wells Fargo and Comerica "from pursuing any collection

20   action for payment of the lines of credit, loans, guaranties and/or promissory notes," (2) to obtain

21   "restitution of all monies that were unlawfully, unfairly, and/or fraudulently obtained from

22   Plaintiffs or in equity and good conscience Defendants should pay to Plaintiffs," and (3) to obtain

23   "reasonable attorneys' fees and costs as provided for in the attorneys' fees provisions set forth in

24   . . . Exhibit F." *Id*. Both Comerica and Bank of America move to dismiss this claim.

25

26           [56] Having resolved Fidelity's motion to dismiss based on Plaintiffs' insufficient

27   allegations of knowledge, the Court need not address the parties' arguments regarding the
     element of malice.

28

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

As a preliminary matter, having reviewed the documents attached as Exhibit F to the CAC, the Court observes that Edward Scarff is identified as the sole borrower or obligor and that the Edward and Nancy Scarff 1985 Trust is identified as the guarantor of Edward Scarff's indebtedness on several guaranties.[57] Nowhere is there any indication that either Pentoga or SSA could be held liable for the sums drawn down from these lines of credit or loans. Accordingly, the claim for declaratory relief will be DISMISSED as to Pentoga and SSA.

Proceeding to Defendants' motions to dismiss, Comerica argues that the claim for declaratory relief is "unnecessary and redundant of [Edward Scarff's] defenses to Comerica's claims" and that it seeks relief that is "improper under a claim for declaratory relief," including an injunction against any collection action, restitution, and attorney's fees, which go beyond a declaration of the parties' rights and duties with respect to one another. Comerica's Mot. to Dismiss and Strike at 15. The Court agrees that Plaintiffs' apparent requests for an injunction, restitution, and attorney's fees within their fifteenth claim for relief go beyond the scope of declaratory relief. Accordingly, paragraphs 230(B), 230(D), and 231, as well as paragraph 7 of Plaintiffs' prayer for relief, will be STRICKEN from the CAC. However, the Court declines to dismiss the claim on the ground that it purportedly is unnecessary and redundant in light of Comerica's own claims.

Bank of America argues that Plaintiffs' claim for declaratory relief should be stricken because "only the Bankruptcy Court presiding over Mr. Scarff's bankruptcy case has the jurisdiction" to determine whether the loan agreements are enforceable and whether Plaintiffs are liable for any sums due and owing under them. Bank of America's Mot. to Dismiss at 9; *see also* 28 U.S.C. § 157(b)(2)(B) (providing that the "core proceedings" that may be heard and determined by bankruptcy judges include "allowance or disallowance of claims against the estate"). Bank of America contends that, because it has "filed a proof of claim [in the bankruptcy

---

[57] On some documents, only Edward Scarff is identified as the trustee of the Edward and Nancy Scarff 1985 Trust, while, on other documents, the purported signatures of both Edward and Nancy Scarff appear as trustees of the trust.

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

court] for draws under its loan agreements in the approximate amount of $1.5 million," the determination of the enforceability of that claim falls within the bankruptcy court's exclusive jurisdiction. Bank of America's Mot. to Dismiss at 10; *see also Pepper v. Litton*, 308 U.S. 295, 304 (1939) (holding that bankruptcy court's jurisdiction is exclusive in allowing and disallowing claims and in collecting and distributing bankrupts' estates and determining controversies related thereto).

At the same time, Bank of America acknowledges that district courts may withdraw their reference of bankruptcy cases and related proceedings to bankruptcy courts. Thus, what Bank of America really seems to be arguing is that this Court's withdrawal of the reference to the bankruptcy court of Plaintiffs' prior complaint, *see* Order Re Mots. to Withdraw Reference to Bankruptcy Ct. and Mots. to Dismiss (Apr. 30, 2004) at 4 (withdrawing reference as to claims of fraud and theft against all Defendants except Comerica), did not also entail withdrawal of the bankruptcy court's jurisdiction over Plaintiffs' claim for declaratory relief, which Bank of America asserts was not contained in Plaintiffs' prior complaint against Bank of America. Plaintiffs counter that the Court's withdrawal of its reference to the bankruptcy court of their "several, different actions," along with the Court's instruction to Plaintiffs to combine their complaints against Defendants into a single consolidated pleading, means that this Court has jurisdiction over the claim for declaratory relief, which is based on Plaintiffs' earlier—and continuing—allegations of fraud. Opp'n to Mot. of Bank of America to Dismiss at 20. The Court agrees. Accordingly, to the extent that the reference to the bankruptcy court has not already been withdrawn with respect to any of Plaintiffs' claims, including specifically Plaintiffs' claim for declaratory relief, it is withdrawn by this Order.

### III. MOTIONS TO STRIKE

Federal Rule of Civil Procedure 15(a) ("Rule 15(a)") allows a party to amend its pleading once "as a matter of course at any time before a responsive pleading is served" and thereafter permits amendment "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). In its two Orders of July 22, 2004, dismissing various claims against Wells Fargo,

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

Intuit, and CRI with leave to amend, the Court gave Plaintiffs "one final opportunity" to amend their complaint "such that only tenable claims are preserved," and it directed Plaintiffs to combine their claims against all Defendants into a single consolidated complaint. Order Re Wells Fargo, N.A.'s Mot. to Dismiss, Mot. to Strike Portions of, and Mot. for a More Definite Statement in Second Am. Cross-Compl. (July 22, 2004) at 9; Order Re Intuit Inc.'s and Computing Resources, Inc.'s Mot. to Dismiss and Mot. to Strike Portions of Second Am. Cross-Compl. (July 22, 2004) at 6. The Court did not contemplate that Plaintiffs would amend their complaint to add a new named Plaintiff—Nancy Scarff—or to assert new claims against particular Defendants, nor can either Order be read to permit such amendments. Nonetheless, Plaintiffs have done just that.

Wells Fargo, Barber, Intuit, CRI, Ciccotti, and Comerica move to strike various amendments made by Plaintiffs without leave of Court, as follows: (1) Wells Fargo, Barber, Intuit, CRI, and Ciccotti move to strike Nancy Scarff as a Plaintiff, (2) Intuit and CRI move to strike Plaintiffs' new claims against them for breach of contract, fraud, conversion, and breach of fiduciary duty, (3) Ciccotti moves to strike Plaintiffs' new claims against her for fraud, conversion, negligence, and breach of fiduciary duty, (4) Barber moves to strike Plaintiffs' new claims against her for fraud in connection with the alleged "payroll scheme," conversion, negligence, breach of fiduciary duty, and fraud in connection with the alleged "credit line scheme," as well as Plaintiffs' two claims pursuant to 12 U.S.C. § 503,[58] and (5) Comerica moves to strike Plaintiffs' new claim for declaratory relief.[59] Intuit, CRI, and Ciccotti argue that

---

[58] Barber argues that the two claims pursuant to 12 U.S.C. § 503 ("Section 503") in the CAC are not "identical" to the Section 503 claim in the First Amended Complaint that was allowed by the Court in its Order of June 18, 2004, that the Section 503 claim in the CAC involving payroll and payroll tax services is a "wholly new claim," and that both of the Section 503 claims in the CAC are asserted collectively by Plaintiffs rather than just by Edward Scarff, as in the First Amended Complaint. Mot. of Wells Fargo and Barber to Dismiss and to Strike at 22-23.

[59] The Court does not address Comerica's motion to strike paragraph 6 of Plaintiffs' prayer for relief, as that paragraph relates only to the claim for slander of title—a claim in which

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1   Plaintiffs should make a proper motion under Rule 15(a) to add Nancy Scarff as a Plaintiff and to

2   assert new claims but also contend that any such amendments would be futile.

3         Plaintiffs assert that they have complied with the Court's Order in consolidating their

4   claims in the CAC and that the CAC comports with the spirit of Rule 15(a), which provides that

5   leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). They

6   contend that all moving Defendants have had fair notice of Plaintiffs' claims for a sufficient

7   amount of time and that Defendants have not shown undue prejudice, bad faith, or a dilatory

8   motive regarding the amendments. With respect to the addition of Nancy Scarff as a named

9   Plaintiff, Plaintiffs argue that they properly amended their complaint pursuant to Federal Rule of

10  Civil Procedure 25(c) to reflect the dissolution of the Edward and Nancy Scarff Family Trust

11  ("Scarff Family Trust"), which previously had been a named Plaintiff in this litigation, by an

12  order of the Bankruptcy Court dated July 17, 2004, and reversion of joint title and interest in the

13  res of that trust (the Scarffs' home in Los Altos, California) to Edward and Nancy Scarff.[60] *See*

14  Fed. R. Civ. P. 25(c) (permitting, upon motion, substitution or joinder of a party in the event of a

15  transfer of interest). However, regardless of whether Plaintiffs could demonstrate good cause for

16  the amendments that are the subject of Defendants' motions to strike, Plaintiffs ignore the fact

17  that they never sought leave to make those amendments.[61]

18        The dismissal—in whole or in part—of many of Plaintiffs' claims for relief renders some

19  of Defendants' motions to strike moot. The foregoing motions to strike that are not rendered

20

21  Comerica is not named as a Defendant.

22        [60] Plaintiffs also suggest that Nancy Scarff's interests and liabilities created by

23  California's law of community property have some bearing on this issue without pointing to any

24  case law relevant to the question of whether she properly may be joined as a party in this case.

25        [61] Intuit, CRI, and Ciccotti argue that, should the Court treat Plaintiffs' arguments in their
    opposition briefs as a motion for leave to amend their complaint and to add a new party, the

26  motion should be denied, as Plaintiffs have not offered a compelling explanation for their failure

27  to assert the new claims earlier and the Scarff Family Trust was not a proper Plaintiff, because it
    was neither a party to the payroll services agreements in the alleged "payroll scheme" nor a

28  borrower in the alleged "credit line scheme."

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1   literally moot will be DENIED, as the Court has addressed the claims at issue in the context of its

2   discussion regarding Defendants' motions to dismiss and has explained therein why those claims

3   may go forward. In short, the remaining claims in the CAC represent the only potentially viable

4   legal theories Plaintiffs have been able to state in their attempt to hold Defendants liable for the

5   losses they allegedly sustained in connection with Huang's years of embezzlement. Although

6   some of these claims may not have been labeled or presented in past versions of the complaint as

7   they now appear in the CAC, they spring from the same set of facts and allegations with which

8   the moving Defendants have been familiar for well over a year. As the Court suggested at the

9   hearing on the instant motions, it is in the interest of moving this case forward simply to allow

10  Plaintiffs' amendments—despite their having been made without the requisite leave of court and

11  thus in violation of procedural rules—so that the parties may proceed with discovery and the

12  preparation of dispositive motions.

13          Finally, Comerica takes issue with Plaintiffs' characterizing themselves as such and

14  asserts that, with respect to Comerica, they are defendants/counterclaimants, because Comerica

15  initiated this litigation by filing suit against Edward Scarff in state court. Comerica argues that,

16  should any of Plaintiffs' claims against it survive the motion to dismiss, they properly should be

17  designated as counterclaims. Therefore, Comerica moves to strike or amend the caption of the

18  CAC to designate Plaintiffs as counterclaimants with respect to their claims against Comerica.

19  Because it perceives no immediate prejudice to Comerica from Plaintiffs' self-designation, the

20  Court will DEFER resolution of this issue until trial.

21                                  **IV. ORDER**

22          Good cause therefore appearing, IT IS HEREBY ORDERED that Defendants' motions to

23  dismiss and motions to strike will be GRANTED IN PART and DENIED IN PART, as discussed

24  in detail above. For the parties' convenience, the claims for relief remaining after this round of

25  motions, along with the Plaintiffs that may assert them and the Defendants against which they

26  may be asserted, are summarized below.

27  //

28

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1    •      First claim for relief: breach of contract—DISMISSED

2    •      Second claim for relief: breach of the implied covenant of good faith and fair

3         dealing—DISMISSED

4    •      Third claim for relief: fraud and deceit—secondary liability only

5         Plaintiffs:      Edward Scarff, Pentoga, and SSA

6         Defendants:      Wells Fargo, Intuit, CRI, Barber, Hvegholm, and Ciccotti

7    •      Fourth claim for relief: conversion—secondary liability only

8         Plaintiffs:      Edward Scarff, Pentoga, and SSA

9         Defendants:      Wells Fargo, Intuit, CRI, Barber, Hvegholm, and Ciccotti

10   •      Fifth claim for relief: negligence—DISMISSED

11   •      Sixth claim for relief: 12 U.S.C. § 503 and 18 U.S.C. § 215

12        Plaintiffs:      Edward Scarff, Pentoga, and SSA

13        Defendant:      Barber

14   •      Seventh claim for relief: breach of fiduciary duty—DISMISSED

15   •      Eighth claim for relief: violations of California's unfair competition law—DISMISSED

16   •      Ninth claim for relief: fraud and deceit—secondary liability only and limited to losses

17        from the alleged "credit line scheme"

18        Plaintiff:      Edward Scarff

19        Defendants:      Wells Fargo, Comerica, Bank of America, Barber, and Burtzel

20   •      Tenth claim for relief: conversion—DISMISSED

21   •      Eleventh claim for relief: negligence

22        Plaintiff:      Edward Scarff

23        Defendants:      Wells Fargo, Comerica, Bank of America, and Burtzel

24   •      Twelfth claim for relief: 12 U.S.C. § 503 and 18 U.S.C. § 215

25        Plaintiff:      Edward Scarff

26        Defendants:      Barber and Burtzel

27   //

28

1    •      Thirteenth claim for relief: violations of California's unfair competition

2           law—DISMISSED

3    •      Fourteenth claim for relief: slander of title

4           Plaintiffs:      Edward and Nancy Scarff

5           Defendant:      Wells Fargo

6    •      Fifteenth claim for relief: declaratory relief—not injunction, restitution, or attorney's fees

7           Plaintiffs:      Edward and Nancy Scarff

8           Defendants:     Wells Fargo, Comerica, and Bank of America

9

10

11

12   DATED: May 23, 2005

13

14                                        /s/ (electronic signature authorized)
                                          JEREMY FOGEL
15                                        United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

This Order has been served upon the following persons:

Rebecca M. Archer        EfilingRMA@cpdb.com

Jonathan R. Bass         EfilingJRB@cpdb.com, mjc@cpdb.com

William Bates, III       bill.bates@bingham.com

Carolyn Chang            carolyn.chang@bingham.com

A. Marisa Chun           EfilingAMC@cpdb.com

Joseph W. Cotchett       plee@cpsmlaw.com

Joseph N. Demko          JND@JMBM.com, eap@jmbm.com

John W. Easterbrook          jwe@hopkinscarley.com, dgraff@hopkinscarley.com

Gilbert Eisenberg        g.eisenberg@sbcglobal.net

William Henry Gavin          gavin@gclitigation.com

Philip L. Gregory        pgregory@cpsmlaw.com, esterling@cpsmlaw.com

Alan F. Hunter           hunter@gclitigation.com

Susan K. Jamison         EfilingSKJ@cpdb.com

William S. Klein         bklein@hopkinscarley.com, ttellez@hopkinscarley.com

Martin H. Kresse         mkresse1@earthlink.net

C. Laine Lucas           lainelucas@bindermalter.com

Julian W. Mack           pmack@buchalter.com

Nanci E. Nishimura       scarff@cpsmlaw.com

William A. O'Connell         woconnell@fnf.com, jamie.umble@fnf.com

Frank M. Pitre           fpitre@cpsmlaw.com, mnewman@cpsmlaw.com

Elizabeth Pritzker       epritzker@cpsmlaw.com

Peter G. Bertrand
Buchalter Nemer Fields & Younger
333 Market Street, 29th Floor
San Francisco, CA 94105-2130

Heinz Binder
Binder & Malter LLP
2775 Park Avenue
Santa Clara, CA 95050

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)

1

Jennifer Coleman
Jeffer Mangels Butler & Marmaro LLP
2  Two Embarcadero Center, Fifth Floor
San Francisco, CA 94111-3824

3

Tod C. Gurney
4  Hopkins & Carley
70 S. First Street
5  San Jose, CA 95113

6  Robert G. Harris
Binder & Malter, LLP
7  2775 Park Avenue
Santa Clara, CA 95050

8

Peter K. Wolff, Jr.
9  100 North Wiget Lane, Suite 150
Walnut Creek, CA 94598

10

USBC Manager–San Jose
11  U.S. Bankruptcy Court
280 South First Street, Room 3035
12  San Jose, CA 95113

13  Arthur S. Weissbrodt
U.S. Bankruptcy Court
14  280 South First Street, Room 3035
San Jose, CA 95113

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case Nos. C 03-03394 JF, C 03-04829 JF, and C 03-05871 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE PORTIONS
OF THE CONSOLIDATED AMENDED COMPLAINT
(JFLC1)